of America. Oral argument not to exceed 15 minutes per side. Michael Hawley for the appellant. You may proceed. May it please the court. I'm Michael Hawley. I represent Mr. Leonard Baugh on this appeal and I would like to reserve three minutes for rebuttal please. Thank you. So in this case the government has conceded there was a violation of the due process clause under Stromberg versus California. It's conceded that, it's conceded basically that the jury could have based its verdict on the 924c count, could have based it on an invalid theory. That invalid theory would have been that the co-conspirator possessed the gun to promote just the robbery conspiracy not the drug trafficking conspiracy. So I think the main question here today is if that error was harmless error. Was there a substantial likelihood, substantial possibility that the jury relied on the invalid theory. I'll go ahead and address harmless error unless the court would like me to address procedural default. So I think there are three things in our favor here on the harmless error analysis. The prosecutor's argument, the jury verdict for Omega Harris, and some common sense. Now the prosecutor argued, he had the right to argue that this 924c conviction can be based on the gun promoting the robbery conspiracy and the drug conspiracy or either one of them. And he used that, he used that. He explicitly argued to the jury you can make this 924c rely on either one of these conspiracies. So he did that probably because he foresaw there was a realistic possibility that the jury might split the conspiracies and might find the gun more tied to one of the conspiracies than the other. And so I think today, you know, we're looking in retrospect or we're looking at it retrospectively, but I think the analysis is the same that the prosecutor had. There's a reasonable, there's a realistic possibility of that. I think the jury verdict for the co-conspirator Omega Harris really confirms that possibility because in that case, you know, Omega Harris was charged with the same set of charges. The robbery conspiracy, the drug trafficking conspiracy, and the 924c that was based on either one of them. And the jury found him guilty of the drug conspiracy. They acquitted him of the robbery conspiracy and the 924c that was associated with both of them. So it's clear there that, at least with Mr. Harris, the jury said well there could be two different conspiracies. One's the drug trafficking one, one's the robbery conspiracy. And they naturally, and this is where the common sense part was coming in, was that they naturally tied the gun to the robbery conspiracy. I mean they were talking about getting the gun to do the robbery and also guns are just used for robberies, right? And so really the jury, and this is maybe what the prosecutor was warding or considering when he made his argument, the jury could have thought that Mr. Ball was in a conspiracy to do the robbery with people like Mr. McQuitty and Branham, people who got the guns and were going to do the robbery. But he's in a drug trafficking conspiracy with Omega Harris. And that drug trafficking conspiracy did not involve having a gun. So I think it's helpful that there's that, we can get a look at how the jury was looking at this case through the verdict for Omega Harris. And the last part was, the common sense part was that, I mean the jury is likely to tie this gun to the violent offense. And again, there was no offense. How do you respond to the sort of argument that, at least for your client, he was found guilty on both of the predicates, the drug trafficking and the Hobbs Act. How do you respond to the notion that those were inextricably intertwined, at least as it relates to your client? I think if the crime was completed it would have been inextricably intertwined for Mr. Ball, I guess, because he was trying to get the drugs to, he was trying to steal the drugs to sell them. But it wasn't completed and it was charged as two different conspiracies. So as I was saying there, there could have been a robbery conspiracy involving Mr. Branham and McQuitty, the people who got the guns, and Mr. Ball. And so the gun was obtained to promote that conspiracy. And then the drug conspiracy is over here with Mr. Harris, who is going to sell them. And that's a different conspiracy that Mr. Ball has with Mr. Harris. So, you know, I think since the crime wasn't completed, it's a different matter than most of those cases that the government cites. Where, you know, if you go in, if someone carries a gun to rob a drug dealer and it actually happens, then yeah, it's all one thing. And it's hard to say that they could be separated. But in this case they could be because it was two different conspiracies. But the evidence against Ball was that he was in prison, right? So the evidence against him were his conversations he had with individuals about what was going to happen. And did he make a distinction between, I mean, does the evidence make any distinction between doing a conspiracy just to get drugs as opposed to a conspiracy to rob? It seems like the evidence against Ball talked about both conspiracies at the same time. So it seems like he, at least from Ball's perspective, the evidence seems to suggest he had in mind that the only way they were going to get the drugs was through a robbery, which would involve the use of a gun. And for practical purposes, the evidence against him would be the same as if the crime had been completed. Yes, Your Honor. And, you know, I mean, there's a difference between him and Harris. He was, Harris was also allegedly a leader of the gang and you would have thought he would have been in on everything too. But Mr. Ball was certainly at the center of these conspiracies. But the fact is the jury is going to have to find that the gun was possessed to promote one of these conspiracies. And, you know, there's McQuitty and Mr. Branham. I think Mr. Branham got a gun as well, but at least Mr. McQuitty went and got a gun. And the jury is going to have to find, was that, you know, was that gun obtained to promote which conspiracy or both conspiracies? And so, and this may be why the jury was willing to equip Mr. Harris on this as well, is that they're looking at this thinking, well, the gun was obtained to promote the robbery. Well, there was an evidentiary basis for determining that Mr. Harris was only aware of the drug transaction, not the robbery. There's no similar evidentiary basis with respect to your client. That's the problem you have. That is kind of the problem I have, although there's not exactly an evidentiary basis for, we're talking about lack of an evidentiary basis. Well, yes, lack of evidence, not, not. But a lack of evidence can be an evidentiary basis just like. Although it's in a footnote of my reply, I mean, the prosecutor argued to the jury that Mr. Harris knew all about the robbery as well. He argued he had the proof against Mr. Harris. He knew the drugs were going to be stolen. But it was a permissible, it would have been a permissible jury finding that Mr. Harris did not know. I think it would have been a permissible jury finding as well that the purpose of the gun, it has to be. Based on the conversations from custody, it'd be pretty hard to find that your client was in a similar situation to Mr. Harris. Sure, sure. But at the same time, it shows that there were possibly two conspiracies. I mean, Mr. Barr is at the center of them, but the jury is putting the gun on the robbery conspiracy. And, you know, the jury has to find that the gun was obtained to promote one of these. Or both of them. But if it's finding that Mr., you know, it's thinking Mr. McQuitty went out to get that gun to commit a robbery. Mr. McQuitty's in on the robbery conspiracy, so the gun is tied to the robbery conspiracy. It's not tied to the drug conspiracy because Mr. McQuitty's out there getting a gun and he's only in on the robbery conspiracy. He knows, you know, I'm supposed to rob these drugs. So that's the kind of distinction that the jury could have made. I mean, there's a reason the prosecutor. There's no evidence they were trying to rob this person of anything other than drugs, correct? No, no. I mean, the prosecutor resorted to this either-or theory for a reason, because he's worried that the jury might do something like this. And I think that's, you know, it's really just the value of that Jones case, the kind of belaboredly went through. All these cases are really fact intensive. In that case, it shows that the jury isn't necessarily going to take the prosecutor's view of the evidence. And the prosecutor's wide knowledge of the law and how conspiracy law works and Pinkerton liability and everything else, and decide, aha, logically these things line up and so this is how it has to be. The jury is going to make decisions and based on some common sense, in that case, they tied the gun to the violent crime and not the drug crime that they easily could have tied it to. And so, you know, in this, under the harmless error standard, it's not a question of is there sufficient evidence to support the conviction, but is there a likelihood that the jury made this mistake? As for default, I mean, I might just say that, you know, I mean, the government really did waive that. I think it's really ambitious for them to try and bring this up now. You know, the gist of it is that they're asking you to forgive them for a waiver they made over a period of four and a half years and penalize Mr. Vaughn for what is really a very reasonable default. And, you know, case law just doesn't support the court going there, I don't believe. So I may reserve the rest of my time. I guess if your time is in default, I'll just leave it at that. Your time is just about to be up. Okay. Okay. Thank you. Good morning, Your Honors, and may it please the court, Michael Rotker from the Department of Justice on behalf of the United States. Let me begin by saying we recognize that we are the ones that raise the issue of default. We think it's appropriate if the court chooses to consider the issue. I don't want to spend my time this morning unless the court has specific questions, because as my opponent suggests, the ultimate question in this case turns on the question of prejudice, and prejudice arises. You have to conduct that review even under the more favorable harmless error standard. So what I'd like to do this morning, and I think the court's questions this morning with my opposing counsel, have put their finger on the pressure points on the prejudice analysis, and what I'd like to do is try to walk the court through the government's assessment of why there is no prejudice here and hopefully respond to the court's questions and obviously answer any others the court may have. Now, the basic facts underlying the particular charges in question here are straightforward, that Mr. Baugh arranged a plot to carry out an armed robbery of a known drug dealer, Kenneth Holden. The purpose of the robbery, as Your Honor questioned my opponent, was to obtain the drugs and only the drugs, because they wanted to possess those drugs and resell them to raise money to post bail for two other of their associates. The indictment charged three crimes. There were the two underlying conspiracies, the robbery and the drugs, and there was the 924C predicated on both, because at the time of trial, these were both valid predicate offenses. Now, at trial, the government presented evidence that showed not only that the two conspiracies were overlapping temporarily, but factually. In effect, what the evidence at trial showed was that the very objective of the robbery was the possession of drugs. And if we're going to look at the trial court record, and I agree with my opponent that it's certainly appropriate to do so, you will see that the government in its closing argument was emphasizing that the two conspiracies bled over onto one another, onto each other, and that's because the evidence was dovetailed. Now, the significance of that is because while we now know that the Hobbs, and now, Mr. Baugh didn't dispute that at trial. What his argument at trial was was that there's no conspiracy at all. He went for the home run. He said, acquit me on all the charges, but he didn't dispute the intertwined nature. Now, the jury convicted him on all three counts, suggesting it did not agree with Mr. Baugh's view and it accepted the government's view. Now, we, of course, know through later changes in the law that the robbery conspiracy doesn't qualify, but in these circumstances where the two underlying predicates were so intertwined, it's difficult to see that there's any reasonable likelihood that the jury would have predicated the gun conviction on one predicate and not the other, and that is the specific import of the 11th Circuit precedent that I have cited this court to. Both parties recognize that there's no Sixth Circuit case law on this issue of first impression, but the 11th Circuit has a kind of established body of case law. Now, there's four discrete cases, all of which are discussed at length in our brief, and what I think is revealing about those cases, not only methodologically are they sound, but they are factually indistinguishable. They all involve the same two predicates. They involve Hobbs Act robbery conspiracy and a drug conspiracy. It's an overlay on this case. They're robberies of drug dealers or drug dealer stash houses. They're all completed crimes in those cases. Is that right? No, they were not. They're conspiracy. They're all. Because the conspiracy itself is the invalid predicate. If it was a completed crime, it wouldn't be invalid. So, yes, they're dovetailed, and I understand defense counsel has sort of raised a point about why those cases don't apply here. I think that argument is wrong, and I see no basis for the court. Their reply brief certainly doesn't engage with those precedents, and we think there's no reason for this court to break ranks with its sister circuit. We think their analysis is fundamentally sound and should be followed. Now, the one argument that I do also want to address is this issue about the co-defendant's verdict, Mr. Harris. Now, like Mr. Baugh, he was charged in the same three crimes, the Hobbs Act robbery, the drug conspiracy, and the firearms charge, but he was only convicted on the drug conspiracy. Now, as I understood the defense argument, it seemed to be that, look, if the jury really thought the gun was used on both, they should have convicted Mr. Harris on the gun charge because they found the drug conspiracy. But I would suggest to you, Your Honors, that, look, any endeavor to sort of glean the basis for a jury's verdict requires some degree of speculation, but typically what the court does to avoid excessive speculation is it focuses on how the case was actually tried. And if you look at the arguments and you look at the evidence below, what Mr. Harris' theory was is, you know, there's evidence that I was involved in the drug dealing, but I was involved on the back end, and this gets to Your Honor's point about the lack of evidence or the evidentiary issue. Harris was saying, yeah, I was the one who was going to spin the drugs into gold. I was going to sell them on the back end, but I had no knowledge. I didn't know that they were going to get these drugs by robbing a drug dealer, let alone an armed robbery of a drug dealer. I mean, I follow that argument. I feel it was a completed crime. But as you mentioned, it wasn't completed. The prosecutor argued all of this is inextricably intertwined. So where's the back end when it's just an agreement? Well, because the agreement has to be to achieve a certain objective, right? So Harris is saying the agreement was that I would do the drugs. I would sell the drugs, but I had no knowledge that the drugs were coming from an armed robbery. And that's the way he used this phrase in his closing argument about the government's thimble-sized proof. It's like, I don't know anything about a robbery of Kenneth Holden. I certainly didn't know it was an armed robbery. Was it a separate drug conspiracy as it relates to Harris, or just another part of the same drug conspiracy? No, another part. It was sequential in nature, as I understand it. I mean, the robbery was going to occur, and then the drug transaction? Yeah, I mean, if you think of it as kind of Venn circles, I think there's a significant overlap. I mean, obviously the drugs were going to take place. You had to get the drugs before you could sell the drugs. But the very objective of the robbery, as Judge Bush had asked. Intertwined in that way. Yes, but sequential in the sense that one has to come first. Did I answer that question? Well, I think the answer to what I ask you is yes. Okay, well then I agree. But again, obviously we can never know for sure how the jury ruled, but I think if you look at the trial record, and you look at the lack of evidence on the front end for Mr. Harris, I think that's a more reasonable and logical interpretation of the evidence, and that the jury acquitted him on those counts because of a lack of knowledge. And so we think, again, based on the 11th Circuit precedent, based on the facts of this case, you're not going to have a lot of scenarios where the two crimes are sort of so inextricably enmeshed with one another. And I would just say that the defense had cited two cases, one from the 2nd Circuit and one from the 5th Circuit, where the courts found that the error was prejudicial. But unlike the 11th Circuit cases, those involved a broad RICO conspiracy and a drug conspiracy. And so it's very difficult, because the RICO conspiracy had so many tentacles to it, you can't say that they're intertwined. Here, it's a very narrow kind of situation where you're robbing a drug dealer for the specific purpose of acquiring the drugs, and we think under the circumstances there's no reasonable likelihood that the instructional error, which we acknowledge happened as a result of an intervening change in the law, in any way prejudiced Mr. Baugh and that the court should affirm the judgment. I'd be happy to answer any further questions on prejudice, on procedural default, or anything the court has, but if not, I'm happy to submit the balance of my time. Thank you, Your Honors. Your Honors, so yes, it's true these cases involved conspiracy, but in our case, the crime was not complete, so that's why they necessarily remain conspiracies. They often charge conspiracies when it's complete. But I think it was the sequential nature of these two conspiracies that made them separate, and also involving different people. You know, Harris was involved in the trafficking, McQuitty and others were involved in the robbery. And so that's why it's possible for Mr. Baugh to have different conspiracies with different people, and the gun involved in one, but the gun not involved in the other. You know, there's a crime 924-0 that is a conspiracy to violate 924-C. That sounds to me more like the theory that the government might have been using to hold Mr. Baugh responsible for the gun. You know, maybe he's conspiring to have a gun to violate both these 924-C in both these ways. But his co-conspirators who go out and get the gun, perhaps the jury's thinking they're just getting the gun to promote the robbery. So, you know, it's not exactly that it's not completed. It's more that it has to be completed in two steps by two different groups of people, and it wasn't completed, and so, you know, the jury's just, as opposing counsel says, we're kind of guessing what the jury's thinking. But there's some, you know, I mean, the prosecutor put his reliance, you know, he cited that either or rule, you know, it could be either one of these, because he has to worry about what the jury's going to do. And especially in a case like this, where there's two different groups of people doing two different things, there's a realistic possibility that the jury was going to attribute the gun only to the robbery conspiracy and not the other. That's all I have, Your Honors. If there's any questions. We appreciate the argument both of you have given. We'll consider the case carefully. Thank you.